Cite as 2025 Ark. App. 530

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CR-24-805

| | | |
|---|---|---|
| MINOR CHILD | | Opinion Delivered November 5, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION |
| V. | | [NO. 60JV-23-845] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE SHANICE JOHNSON, JUDGE |
| | | AFFIRMED |

**BART F. VIRDEN, Judge**

Appellant, a minor (MC), appeals from the Pulaski County Circuit Court's revocation of his probation. MC argues that the evidence was insufficient to show that he violated a rule or condition of his probation. We affirm.

## I. *Background*

In October 2023, MC was adjudicated delinquent on a charge of third-degree domestic battery against his sister. He was placed on "an indefinite term of months of probation" subject to standard rules and a list of special conditions, and he was subsequently released to his mother's custody. According to the standard rules, MC was not allowed to stay overnight away from home without his mother's permission; he was to obey a 9:00 p.m. curfew; and he was not to use any illegal drugs.

The State filed a petition to revoke MC's probation alleging that on July 28, 2024, MC violated a rule or condition of his probation by staying away from home overnight without his mother's permission and missing his 9:00 p.m. curfew. The State also alleged that MC tested positive for THC on July 24, 2024.

At a hearing held in August, Maya Ford, MC's mother, testified that there was an "altercation" at her house on July 28. She said that MC was being defiant and not following her rules. She had asked MC to leave the house so that everyone could "cool off," but MC refused. Finally, Ford called the police and requested that the police take MC to a friend's house, which the police agreed to do. Ford said, "I told [MC] to come back before curfew." When MC called later—twenty minutes before curfew—asking whether he had to come home, Ford said that she told him that he needed to come home with a changed attitude. She said that she told MC that he could come home "if" he had a changed attitude but that he was not going to be disrespectful. Ford said that she had also texted MC's friend and told him to tell MC to come home but was told that MC had already left. Ford went looking for MC, but she did not find him at his father's home or on the friend's street. Ford said that, when MC had not returned home the next day, she informed MC's probation officer and was told to fill out a runaway report.

Justin Stuart, MC's probation officer, testified that he had read and explained the rules to MC and that MC had indicated that he understood those rules. At the conclusion of the testimony, the trial court began by saying that it found Ford's testimony credible. The trial court found that MC had permission to be at his friend's home but that the permission

2

had been "revoked" when it came to staying overnight. The trial court also found that MC had violated his probation by failing to obey his curfew. The trial court accepted Stuart's recommendations on disposition, which included residential treatment for MC followed by probation subject to both standard and special rules. This appeal followed.

## II. *Standard of Review*

Under Ark. Code Ann. § 9-27-339 (Repl. 2020), a trial court may revoke a juvenile's probation if it finds by a preponderance of the evidence that the juvenile violated the terms and conditions of probation. The State need only show that the appellant committed one violation in order to sustain a revocation. *T.R. v. State*, 2018 Ark. App. 328, 552 S.W.3d 452. On appeal, the trial court's findings will be upheld unless they are clearly against the preponderance of the evidence. *Id.* Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the trial court's superior position to gauge these matters. *C.C. v. State*, 2014 Ark. App. 262.

## III. *Discussion*

MC argues that his mother forced him to leave her home by having the police take him away. He asserts that she did not call him to come home; rather, he called her to ask whether he should come home. According to MC, Ford gave him an option to either come home if his attitude had changed or stay away if it had not. MC argues that Ford did not instruct him to come home. He argues that the State thus failed to prove that he spent the night away from home without his mother's permission. As for violating curfew, MC argues

3

that Ford admitted she did not know that he was anywhere other than at his friend's home after 9:00 p.m. that night, which was where she had given him permission to stay.

MC indicated that he understood the rules and conditions of his probation, including the two rules that the trial court found he had violated. The trial court found that Ford credibly testified that she instructed MC, before he left to go to his friend's house, to return home before his curfew. According to Ford's testimony, MC had permission to remain at his friend's house just long enough to "cool off" after the incident at Ford's home. The trial court noted that, while MC initially had permission to go to the friend's house, the permission had been withdrawn when it came to staying overnight and past his curfew. While MC may have interpreted Ford's initial statement as making his return home optional, Ford made other statements clearly instructing MC to return home before his curfew, and MC was well aware that he must comply with the rules and conditions of his probation. We cannot say that the trial court's revocation decision is clearly against the preponderance of the evidence. Either violation would be sufficient to support the revocation of MC's probation.

Affirmed.

ABRAMSON and TUCKER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.

4